**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | | |
|---|---|---|
| **LOTTIE THOMPSON-GROVES** | ) | |
| **and BILLY GROVES** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **1:19-cv-961** |
| | ) | |
| **BIG LOTS STORES, INC.,** | ) | |
| **Defendant.** | ) | |

## <u>COMPLAINT</u>

### I.     INTRODUCTION

Plaintiffs, Lottie Thompson-Groves and Billy Groves (hereinafter, "Plaintiffs" or "Mrs. Thompson-Groves" and "Mr. Groves"), file this Title III, Americans with Disabilities Act (hereinafter, "ADA") action against Defendant, Big Lots Stores, Inc. (hereinafter, "Defendant" or "Big Lots"), pursuant to 42 U.S.C. § 12181 *et seq*. In Count One of the Complaint, Plaintiffs seek to enjoin Defendant to remove architectural barriers from Defendant's facility. In Count Two of the Complaint, Plaintiffs seek to enjoin Defendant to maintain policies, practices, and procedures necessary to maintain Defendant's facility free of architectural barriers both now and once the architectural barriers are removed from Defendant's facility. In Count Three of the Complaint, Plaintiffs seek to enjoin Defendant's use of Defendant's facility to provide full and equal enjoyment of Defendant's facility to individuals with disabilities. Count Two of the Complaint and Count Three of the Complaint seek independent relief in addition to the removal of architectural barriers from Defendant's facility. In Count Four of the Complaint, Plaintiffs seek to enjoin Defendant's failure to design and construct Defendant's facility to ADA compliance.

1

## II.    JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.    This action is for declaratory relief and injunctive relief, pursuant to 42 U.S.C. § 12181 *et seq*., Title III of the ADA and implementing regulations; therefore, this Court is vested with original jurisdiction under 28 U.S.C. § 1331 and § 1343.

2.    Venue is proper in this Court, the United States District Court for the Southern District of Alabama, pursuant to Title 28, U.S.C. § 1391 and the Local Rules of the United States District Court for the Southern District of Alabama.

3.    The extent of Mrs. Thompson-Groves' physical impairments limits her ability to care for herself, perform manual tasks, walk, stand, lift, and bend, all of which are major life activities pursuant to 42 U.S.C. § 12102(2)(A). Therefore, Mrs. Thompson-Groves is disabled pursuant to the ADA, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *see also*, 28 C.F.R. § 36.104.

4.    Mr. Groves has neuropathy, which substantially limits the use of his legs and feet, creates back problems, and severely limits the use of his right hand. These medical problems limit his ability to walk stand, lift, bend, work, perform manual tasks, all of which are major life activities pursuant to 42 U.S.C. § 12102(2)(A). Therefore, Mr. Groves is disabled pursuant to the ADA, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *see also*, 28 C.F.R. § 36.104.

5.    Defendant is a limited liability company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Defendant owns and operates the real property and improvements located at 8 Saraland Boulevard S., Saraland, Alabama 36571. Defendant's facility is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(B).

6.      All events giving rise to this lawsuit occurred in the Southern District of Alabama and Defendant is a citizen thereof.

7.      Plaintiffs live 3 miles from Defendant's facility, so that they travel near Defendant's facility constantly. They have shopped at Defendant's facility frequently in the past and intend to continue to do so. Because of Defendant's extremely close proximity to Plaintiffs' home, Plaintiffs intend to continue to shop at Defendant's facility for the sheer convenience alone, plus to confirm compliance with the ADA once the repairs are made and the ongoing practice issues begin to be addressed. Defendant's store has a variety of items Plaintiffs use. Mrs. Thompson-Groves and Mr. Groves do not know the exact date of each and every return visit to Defendant's facility because they have not planned every shopping trip for the remainder of their lives; however, such specific planning is not necessary to invoke the ADA. *See*, *e.g.*, *Parr v. L&L Drive Inn Facility*, 96 F.Supp.2d 1065, 1079 (D. Haw. 2000); *Segal v. Rickey's Facility and Lounge, Inc*., No. 11-61766-cn (S.D. Fla. 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such facilities at the spur of the moment."). Nevertheless, Mrs. Thompson-Groves and Mr. Groves definitely intend to return to Defendant's facility.

8.      Mrs. Thompson-Groves and Mr. Groves have been denied full and equal enjoyment of Defendant's facility on the basis of their disabilities because of the barriers described below in paragraph eighteen (18) and throughout the Complaint.

9.      Mrs. Thompson-Groves and Mr. Groves have Article III standing to pursue this action because of the following: (1) Mrs. Thompson-Groves and Mr. Groves are disabled, pursuant to the statutory and regulatory definition, (2) Defendant's facility is a place of public accommodation pursuant to the statutory and regulatory definition, (3) Mrs. Thompson-Groves

3

and Mr. Groves have suffered a concrete and particularized injury by being denied access to Defendant's facility, and by Defendant's denial of the use of the facility for Plaintiffs' full and equal enjoyment, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph sixteen (16) below.

## III.     PLAINTIFFS' CLAIMS

**ADA, TITLE III**

10.     Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq*. on or about July 26, 1990. Commercial enterprises were provided one and a half years from enactment of the statute to implement the requirements. The effective date of Title III of the ADA was January 26, 1992. 42 U.S.C. § 12181; 20 C.F.R. § 36.508(A); *see also*, § 36.304.

11.     Pursuant to 42 U.S.C. § 12181(7)(B) and 28 C.F.R. § 36.104, Defendant's facility is a place of public accommodation in that Defendant's facility is a facility providing goods and services to the public. Therefore, Defendant's public accommodation is covered by the ADA and must comply with the ADA.

**COUNT ONE**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
**Architectural Barriers**

**Defendant's Facility is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in the Complaint.**

12.     Plaintiffs are informed and believe based on publicly available information that the building in which Defendant's facility is located at 8 Saraland Boulevard S., Saraland, Alabama 36571 was first constructed in 1986. There is no evidence of renovations thereafter in the public record.

13.     The ADA was enacted requiring that facilities constructed prior to January 26, 1992 are considered existing facilities, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

**Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction**

14.     Defendant has discriminated, and continues to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at Defendant's facility in derogation of 42 U.S.C. § 12101 *et seq*., and as prohibited by 42 U.S.C. § 12182 *et seq*.

15.     Prior to the filing of this lawsuit, Plaintiffs were denied full and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about Defendant's facility. Plaintiffs' access was inhibited by each of the described architectural barriers detailed in the Complaint, which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

16.     Mrs. Thompson-Groves and Mr. Groves have definite plans to return to Defendant's facility in the future, as described in paragraph seven (7) above. Mrs. Thompson-Groves and Mr. Groves will return to Defendant's facility within a month at the latest, not only to enjoy the goods and services at Defendant's facility, but also to see if Defendant has repaired the architectural barriers and changed the policies, practices, and procedures. Mrs. Thompson-Groves and Mr. Groves will continue to do so even when Defendant's facility is repaired. The barriers are not just created by construction issues; instead, many of the barriers are created by human activity, from the way Defendant's workers at the facility use the architectural elements of the facility. The barriers created by human activity will need to be reviewed and maintained forever, to be sure

Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendant, Mrs. Thompson-Groves and Mr. Groves will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein, and as a result, be discriminated against by Defendant on the basis of their disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied ". . . there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due to the definiteness of Mrs. Thompson-Groves' and Mr. Groves' plan to continue visiting Defendant's facility, there exists a genuine threat of imminent future injury. Mrs. Thompson-Groves' and Mr. Groves' stated intent to return is plausible.

## Architectural Barriers

17.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the DOJ, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

18.     Mrs. Thompson-Groves and Mr. Groves have been from the parking lot to the entrance; from the entrance to the toilet rooms; the toilet rooms themselves; from the entrance to the sales and service counters; throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to, all of which is more specifically described below. Moreover, Defendant's facility located at 8 Saraland Boulevard S., Saraland, Alabama 36571, violates the ADA in the parking lot, toilet rooms, sales and service counters, and in particular but not limited to:

**(1)** Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the facility for able-bodied individuals, but fails to

6

provide the same level of access by providing an ADA accessible route from accessible car parking spaces to an accessible entrance for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:

a. Defendant fails to maintain the parking area and an associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be accessible to disabled individuals, which includes but is not limited to, parking spaces failing to be located on an accessible route to the entrance, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b. The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to an accessible entrance of the facility;

c. The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces adjacent accessible access aisles extend the full length of the accessible parking spaces and are marked so as to discourage

parking in the accessible access aisles, which renders the accessible access aisles unusable by the disabled;

d.  The parking area fails to maintain the required amount of accessible parking spaces, including adjoining accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces adjacent accessible access aisles do not overlap the vehicular way;

e.  The parking area fails to maintain the required amount of accessible parking spaces, including adjoining accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces and adjacent accessible access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the accessible parking spaces as unusable by the disabled;

(2) Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the facility for able-bodied individuals, but fails to provide the same level of access by providing an ADA accessible route from accessible van parking spaces to an accessible entrance for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:

a.  Defendant fails to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways

8

that are required to be accessible to disabled individuals, which includes but is not limited to, accessible van parking spaces failing to be located on an accessible route to an accessible entrance, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b.   The parking area fails to maintain the required amount of accessible van accessible parking spaces, including accessible associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible van parking space measures 132 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to an accessible entrance of the facility;

c.   The parking area fails to maintain the required amount of accessible van parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible van parking spaces adjacent access aisles extend the full length of the accessible parking spaces and are marked so as to discourage parking in the access aisles, which renders the aisles unusable by the disabled;

d.   The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

    **e.** The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces are identified with accessibility signage, including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

    **f.** The parking area fails to maintain the required amount of accessible van parking spaces, including accessible adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces and accessible adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the accessible parking spaces as unusable by the disabled;

**(3)** Defendant provides a sales and service counter for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **a.** The sales and service counter is not maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which has the discriminatory

effect of rendering the counter, associated elements, and services offered at the counter as unusable by disabled individuals;

**b.** The sales and service counter is not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and associated elements are located adjacent to a walking surface complying with 403;

**c.** The sales and service counter is not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals, which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or alternatively, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**d.** The sales and service counter is not maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effect of rendering the counter and associated benefits and services as unusable by the disabled;

    **e.**  The sales and service counter is not maintained in operable condition with the ADA Standards for Accessible Design so that the accessible counter extends the same depth as the non-accessible portion of the counter;

    **f.**  The sales and service counter is not maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in an independently usable location at the accessible counters, which has the discriminatory effect in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals.

**(4)** Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

    **a.**  The unisex accessibility signage fails to be located along the latch side of the toilet room door;

    **b.**  The toilet paper dispenser fails to be properly maintained in conformance with the ADA Standards for Accessible Design so that the dispenser is located 7-9 inches from the front of the water closet;

    **c.**  The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of

the toilet room and 24 inches on the transfer side and mounted so that the top

gripping surface measures 33-36 inches above the finished floor;

**d.** The centerline of the water closet fails to be 16 inches (405 mm) minimum to

18 inches (455 mm) maximum from the side wall or partition;

**e.** The toilet room door does not provide the proper maneuvering clearance to exit

the toilet room.

19. To date, the barriers to access and other violations of the ADA still exist and have

not been remedied or altered in such a way as to effectuate compliance with the provisions of the

ADA.

20. Mrs. Thompson-Groves and Mr. Groves have been obligated to retain the

undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their

reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

21. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant

Plaintiffs' injunctive relief, including an Order to alter the discriminating facility to make it

accessible to individuals with disabilities to the extent required by the ADA, and closing the facility

until the requisite modifications are completed, and to further order Defendant to modify the

policies, practices, and procedures, to provide equal use of Defendant's facility, services, and

benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
**Policies, Practices, and Procedures Denying Equal Benefits**

**ADA, Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

22.     Plaintiffs incorporate paragraphs 1-21 above.

23.     The ADA, Title III provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1).

24.     The ADA, Title III specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii) - (iii); 28 C.F.R. § 36.202(b) - (c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of § 36.308, § 36.203).

25.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices,

exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

26.     To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

27.     By the clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also*, H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

28.     For that reason, the ADA applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may

not have a policy, practice, or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.*, 294 F.3d 1279, (11th Cir. 2002) that:

> A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges.

**<u>Defendant's Failed Practices and Lack of Policies are Discriminatory</u>**

29. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

30. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

31. As detailed below, Defendant has failed to make reasonable modifications in the policies, practices, and procedures that are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to

take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated, or otherwise treated Plaintiffs differently than individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Mrs. Thompson-Groves and Mr. Groves. Defendant will continue that discrimination forever until enjoined as Plaintiffs request. The discrimination is described more particularly in the following paragraphs.

32.    Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA, Title III compliance policies, practices, and procedures as to architectural barriers.

33.    Defendant's use of Defendant's facility, and the practices at Defendant's facility located at 8 Saraland Boulevard S., Saraland, Alabama 36571, creates barriers, and in doing so, denies Plaintiffs the full and equal enjoyment of Defendant's facility. Those practices include:

  a.   Defendant makes the parking area inaccessible for use by the disabled by failing to provide ADA accessible parking with connecting accessible routes to the facility from the parking lot, which means that Plaintiffs are forced to depend on assistance from a third party to get into Defendant's facility, whereas the non-disabled conveniently access Defendant's facility without the need of third party assistance;

  b.   Defendant makes the sales and service counter inaccessible;

  c.   Defendant makes the toilet rooms inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the toilet rooms so that Plaintiffs are afforded the opportunity to independently use the toilet rooms, or

clean up, or move into and throughout the toilet rooms, whereas non-disabled individuals are able to independently use the toilet rooms;

 **d.** Defendant fails to provide a place for the disabled to enjoy the goods and services like able-bodied people can;

 **e.** Defendant's policies, practices, and procedures are conducted without regard to disabled individuals.

34. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA, Title III architectural barriers only upon demand by the disabled.

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else Defendant failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at Defendant's facility as individuals without disabilities, 42 U.S.C. § 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Defendant's facility, as described above in detail.

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building and design standards and regulations.

38. To date, Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

39. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. Plaintiffs hereby demand that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III of the ADA, and all implementing regulations so that architectural barriers identified above are permanently removed from Defendant's facility consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Defendant's facility; and (3) Defendant will modify the practice of making ADA, Title III architectural barrier remediations only upon demand by the disabled.

40. As pled above, Defendant owns and operates the real property and improvements in which the public accommodation is located at 8 Saraland Boulevard S, Saraland, Alabama 36571; therefore, pursuant to 42 U.S.C. § 12182, is responsible for creating, implementing, and maintaining policies, practices, and procedures, as alleged above.

41. The ADA is over twenty-five (25) years old. Defendant knows Defendant must comply with the ADA, Title III. The ADA, Title III requires modifications in policies, practices, and procedures to comply with the ADA, as pled above in the statute. 42 U.S.C. § 12182(b)(2)(A)(ii).

42. By this Complaint, Plaintiffs provide sufficient notice of their demands for an alteration in Defendant's policies, practices, and procedures.

43.     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

44.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
**VIOLATION OF THE ADA, TITLE III**
**Denial of Full and Equal Enjoyment**

45.     Plaintiffs incorporate paragraphs 1-44 above.

46.     42 U.S.C. § 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

47.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

48.     Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities," 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. § 12101(a)(7).

Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(8).

49.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) - (2).

50.     The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

51.     The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

52.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services,

programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq*., and the regulations promulgated thereunder.

53.    To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by the clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination*"* including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

54.    For that reason, the ADA applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

55.    The keystone for this analysis is Defendant must start by considering how the facility is used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct.

2169, 162 L.Ed.2d 97 (2005); *see also*, *Baughman v.   Walt Disney World Company*, 685 F.3d
1131, 1135 (9th Cir. 2012).

      **56.**     Plaintiffs were denied full and equal access to Defendant's public accommodation.
Plaintiffs specifically and definitely want to return to Defendant's public accommodation. More
specifically, Plaintiffs want to be afforded the same level of service that is offered to non-disabled
individuals, which Defendant has failed to provide to them as follows: Defendant failed to provide
an accessible parking area and accessible route for disabled individuals, which means Plaintiffs
cannot park, cannot independently get out of the car and onto a wheelchair, cannot independently
travel from the parking area into the public accommodation, cannot determine if there is a usable
parking space, and must determine by trial and error how he is to park and move into the public
accommodation; Defendant failed to provide an accessible sales and service counter; Defendant
failed to provide an accessible toilet room for disabled individuals, which means that, unlike the
able-bodied, the disabled are challenged or denied the opportunity to independently use the toilet
room, clean up after using the toilet room, move throughout the toilet room, and prohibited from
using all other elements of the toilet room; Defendant's continued failure to maintain ADA
accessibility as an integral part of the highest possible experience that non-disabled individuals get
to independently enjoy has segregated or otherwise treated Plaintiffs and others similarly situated
differently, in that, Defendant's public accommodation makes Plaintiffs dependent on family or
an independent third party, which is not the same experience that Defendant affords to non-
disabled individuals and all the foregoing failures by Defendant inhibited Plaintiffs from having
the same experience that non-disabled individuals have when at Defendant's public
accommodation.

57.     In the Preamble to Title III, the DOJ recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

58.     The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii) - (iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

59.     Thus, Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled individuals from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III),* at 50*, 1990 U.S.C.C.A.N* at 473*.* The ADA provides a broad mandate to "eliminate discrimination against disabled individuals, and to integrate those individuals into the

economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675; 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

60.     Defendant discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of Defendant's facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Defendant's public accommodation.

61.     Defendant's conduct and Defendant's unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiffs and others similarly situated unequally.

62.     Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible  features  at  Defendant's facility. 28 C.F.R.§ 36.211(a).

63.     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

64.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12183(a)(1)**
**Failure to Design and Construct Defendant's Facility for ADA Compliance**

65.     Plaintiffs incorporate paragraphs 1-64 above.

66.     42 U.S.C. § 12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct facilities
> for first occupancy later than 30 months after July 26, 1990, that are
> readily accessible to and usable by individuals with disabilities,
> except where an entity can demonstrate that it is structurally
> impracticable to meet the requirements of such subsection in
> accordance with standards set forth or incorporated by reference in
> regulations issued under this subchapter.

67.     Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id*. at § 12101(a)(5). In the Preamble to Title III, the DOJ recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

68.     To eliminate such segregation, Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities." This requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101- 485(III), at 499-500 (1990). This requirement requires "a high degree of convenient accessibility," *id.*, as well as access to the same services that are provided to members of the general public. "For new

26

construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id.*

69.     As the legislative history makes clear, the ADA is geared to the future with the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

70.     To realize the goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design are incorporated into the DOJ's regulations implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

71.     The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, seating, toilet rooms, and sales/service areas.

72.     Defendant owns and operates the real property and improvements in which Defendant's facility is located and is directly involved in the designing and/or construction of the public accommodation in this litigation.

73.     To date, Defendant's discriminating actions continue.

74.     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

75.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendant on Counts One through Four and request the following injunctive relief and declaratory relief:

1. That the Court declare that the property and business operated by Defendant as well as all Defendant's illegal actions described herein violate the ADA, as more particularly described above;

2. That the Court enter an Order enjoining Defendant to alter Defendant's facility to make Defendant's facility accessible to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and implementing regulations, as stated in Count One;

3. That the Court enter an Order, in accordance with Count Two, directing Defendant to modify the policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make Defendant's business practices consistent with ADA, Title III in the future;

4. That the Court enter an Order directing Defendant to provide Plaintiffs full and equal access both to the experience and to the use of Defendant's public accommodation, and further Order Defendant to maintain the required accessible features at the public accommodation so that Plaintiffs, and others similarly situated, are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing Defendant to evaluate and neutralize Defendant's policies, practices, and procedures towards individuals with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

6.     That the Court award reasonable attorneys' fees, costs, including expert fees, and other expenses of suit, to Plaintiffs; and

7.     That the Court enjoin Defendant to remediate Defendant's public accommodation to the proper level of accessibility required for the design and construction of Defendant's facility for first occupancy, as stated in Count Four;

8.     That the Court award such other, further, and different relief as the Court deems necessary, just, and proper.

Respectfully Submitted, this the 12th Day of November 2019.

*Cassie E. Taylor*
Cassie E. Taylor
AL Bar # 8297-N67R
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-356-5314
Facsimile: 334-819-4032
Email: CET@ADA-Firm.com
*Counsel for Plaintiffs*

L. Landis Sexton
BPR # AL-5057N71L
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: LLS@ADA-Firm.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 12th Day of November 2019 to the following:

Big Lots Stores, Inc.
Registered Agent: Corporation Service Company Inc.
641 South Lawrence Street
Montgomery, Alabama 36104

Cassie E. Taylor
Cassie E. Taylor
*Counsel for Plaintiffs*